IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HEATHER K. KNIGHT, | No. C 05-03481 SBA |
| Plaintiff, | **ORDER** |
| v. | [Docket No. 23] |
| CHRISTOPHER LONGAKER, | |
| Defendant. | |

Currently before the Court is Defendant's Motion for Summary Adjudication as to the First and Second Causes of Action and the demand for maintenance and cure [Docket No. 23] in the Plaintiff's Complaint. Having read and considered the arguments presented by the parties in the papers submitted to the Court, the Court finds this matter appropriate for resolution without a hearing. The Court hereby GRANTS Defendant's Motion for Summary Adjudication as to the First and Second Causes of Action and the demand for maintenance and cure [Docket No. 23].

**BACKGROUND**

This is a personal injury suit brought by Heather Knight ("Plaintiff"), a weekend sailing enthusiast. Plaintiff alleges that she was injured while participating in an amateur sailboat race on San Francisco Bay on the boat of Christopher Longaker ("Defendant"). During the course of a jibe maneuver, which involves the shifting of sails, the starboard side of the boat touched down into the water, with the mast almost parallel to the water. Berschler Decl., Ex A at 111:4-8. The boom and chute came around, striking Plaintiff from behind on her left shoulder. *Id.* at 111:9-19. Plaintiff's head subsequently hit the winch, a mechanical device used to wind up rope. *Id* at 112:5-10. Prior to the

12

incident, wind conditions had been heavy, and Defendant had been driving the boat despite a bicep injury he suffered earlier in the race. *Id*. at 102:22-103:21.

Plaintiff met Defendant through a sailing enthusiast website and sailed with him for the first time in August of 2003. *Id*. at 67:3-17, 69:23-25. The first or second time she sailed with Defendant, she was told she would be crew. Berschler Decl., Ex. A. at 71:2-4. She sailed on Defendant's boat in some, but not all of the races in which Defendant's boat was entered between August 2003 and July 2004. Paetzold Decl., Ex. B at 171: 10-12; Longaker Decl. at ¶¶ 4-5. Plaintiff missed "bunches" of races, and if she was unable to attend a race due to work or a social engagement, she would let Defendant know ahead of time. Paetzold Decl. Ex. B at 171:10-12, 171:21-172:1. She had no obligation to participate in every race. *Id*. at 170:23-24. Typically after each race in which she did participate, Defendant would ask her if she would be available to sail in the next one. *Id*. at 170:14-16.

The selection of the crew for races on Defendant's boat was based primarily on who wanted to go and who was available. Longaker Decl. at ¶ 7. Other important factors in the selection of participants were sportsmanship, a respect for safety, and how well each person got along. *Id*. Participants made decisions themselves about what position they would take on the boat and rotated positions based on skill and experience level. *Id*. at ¶ 8. Defendant was the skipper and usually, though not always, took the helm and made tactical decisions during each race. *Id*. at ¶ 8. When Plaintiff sailed on the boat, she usually took one of the positions that involved trimming the jib or spinnaker. *Id*. at ¶ 8.

Plaintiff was not paid to crew on Defendant's boat and had never been paid to crew in the past. Paetzold Decl., Ex. B at 68:23-69:1, 140:4-9. Plaintiff paid for her own transportation and bought her own sailing gear. Longaker Decl. at ¶ 6. The only rewards for winning the sailboat races were bragging rights and the pleasure of sailing. *Id*. at ¶ 4. Plaintiff did not have any formal training in sailing and has not taken any sailing classes. Paetzold Decl., Ex. B at 68:14-19. She has never held herself out to be a professional sailor. *Id*. at 68:20-22.

Plaintiff and Defendant both had full time, land-based jobs that were unrelated to sailing. Longaker Decl. at ¶ 3; Paetzold Decl., Ex. B at 18:1-3, 20:19-25. Plaintiff worked full time as a

language instructor in Monterey, California. Paetzold Decl., Ex. B at 18:1-3, 20:19-25. Defendant used his boat only for recreational sailing, and the sailboat races occurred on weekends. Longaker Decl. at ¶ 2. Before starting to sail on San Francisco Bay in 2003, Plaintiff had previously enjoyed recreational sailing for years on other boats. Paetzold Decl., Ex. B at 60:21-61:6, 64:10-15, 67:3-17.

Plaintiff alleges three Causes of Action: 1) negligence under the Jones Act, 46 U.S.C. § 30104 (2006), 2) unseaworthiness under general maritime law, and 3) negligence under general maritime law. Defendant has moved for summary adjudication on the First and Second Causes of Action and the demand for maintenance and cure.

## **LEGAL STANDARD**

### A.     **Summary Adjudication Standard**

Federal Rule of Civil Procedure 56 provides for summary adjudication when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

The moving party has the burden of establishing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If it does so, the non-moving party must go beyond the pleadings and identify facts that show a genuine issue for trial. *Id*. at 324. Summary judgment should be entered against a "party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id*. at 322. The non-moving party has a duty to present affirmative evidence in order to defeat a properly supported motion for summary judgment. *Anderson v. Liberty Lobby*, 477 U.S. 242, 252 (1986).

### B.     **Seaman Status Under Jones Act**

The Jones Act of 1920 extends the protection of the Federal Employers' Liability Act (45 U.S.C.A. §§ 51–60) to any "seaman injured in the course of employment." 46 U.S.C. § 30104 (2006). The Jones Act does not define who may qualify as a "seaman," and therefore, Congress left it to the courts to decide which maritime workers may receive seaman status. Early on, the Supreme Court concluded that Congress intended "seaman" to take its established meaning under general maritime law

at the time of enactment of the Jones Act. *See Chandris v. Latsis*, 515 U.S. 347, 355 (1995). For example, in *Warner v. Goltra*, 293, U.S. 155, 159, 55 S. Ct. 46, 48 (1934), the Supreme Court noted that a seaman is a "mariner...who lives his life upon the sea."

Congress defined the term negatively in 1927 when it enacted the Longshore and Harbor Workers' Compensation Act (LHWCA), which provided land-based maritime workers with compensation for injury, while excluding explicitly those covered under the Jones Act. 515 U.S. at 355. Despite the distinction between sea-based maritime workers and land-based maritime workers, the federal courts have struggled to determine which maritime workers should qualify as seamen because of the many circumstances in which maritime workers go upon the water. *Id.* at 356.

In *McDermott Int'l, Inc. v. Wilander*, 498 U.S. 337 (1991), the Supreme Court attempted to clarify the definition of "seaman" under the Jones Act for the first time in 33 years. 515 U.S. at 357. The Court articulated the requirement of "employment-related connection to a vessel in navigation." 498 U.S. at 355 ("The key to seaman status is employment-related connection to a vessel in navigation.").

Finally in *Chandris*, the Supreme Court laid out two essential elements of the "employment-related connection to a vessel in navigation" requirement. First, the "employee's duties must 'contribut[e] to the function of the vessel or to the accomplishment of its mission.'" 515 U.S. at 368 (quoting *Wilander*, 498 U.S. at 355). This first threshold requirement is broad, such that all maritime employees who "work at sea in the service of a ship are *eligible* for seaman status." *Id.* (quoting *Wilander*, 498 U.S. at 354) (emphasis in original).

Second, the employee must have "a connection to a vessel in navigation (or an identifiable group of vessels) that is substantial in terms of both its duration and its nature." 515 U.S. at 368. The purpose of this substantial connection requirement is to separate "sea-based maritime workers" who "owe their allegiance to a vessel" from "land-based employees" who do not, and who have only a transitory or sporadic connection to a vessel. *Id.* at 376 The Court clarified the temporal element further, noting that "a maritime worker who spends only a small fraction of his working time on board a vessel is fundamentally land based and therefore not a member of the vessel's crew, regardless of what his duties

are." *Id*. at 371.

Regarding the temporal element, the Supreme Court cited with approval a rule of thumb used by the Fifth Circuit: "A worker who spends less than about 30 percent of his time in the service of a vessel in navigation should not qualify as a seaman under the Jones Act." *Id*. However, the Supreme Court noted that "the inquiry into seaman status is of necessity fact specific; it will depend on the nature of the vessel and the employee's precise relation to it." *Id*. (quoting *Wilander*, 498 U.S. at 356, 111 S. Ct. at 818).

The *Chandris* test requires a fact-specific examination encompassing the totality of the injured person's employment circumstances. *Papai v. Harbor Tug and Barge Company*, 67 F.3d 203, 206 (9th Cir. 1995). Regarding summary judgment, the Supreme Court has held that summary judgment would be appropriate if the undisputed facts show that a maritime worker has a "clearly inadequate temporal connection" to vessels in navigation. 515 U.S. at 371.

**C.    Seaman Status Under the Doctrine of Seaworthiness**

Under the general maritime law doctrine of seaworthiness, the owner of an unseaworthy ship may be held liable without fault for injuries to seamen employed on his vessel. *The Osceola*, 189 U.S. 158, 175 (1903); *see also Cortes v. Baltimore Insular Lines*, 287 U.S. 367, 370-371 (1932); *Mitchell v. Trawler Racer, Inc.*, 362 U.S. 539, 550 (1960); *Seas Shipping Co. v. Sieracki*, 328 U.S. 85, 90-94 (1946).

"Seaman status for purposes of the warranty of seaworthiness is accorded to that class of persons who may claim the protection of the Jones Act and the doctrine of maintenance and cure." THOMAS J. SCHOENBAUM, ADMIRALTY AND MAR. LAW § 6-27 (4th ed. 2004). The Ninth Circuit has treated the definition of seaman status under the Jones Act and under the doctrine of seaworthiness as coextensive. *See Scheuring v. Traylor Bros., Inc.*, 476 F.3d 781, 784, n.3 (9th Cir. 2007) ("[T]hese two additional claims depend on [plaintiff] qualifying as a "seaman" under the Jones Act. In other words, if the Jones Act claim fails, so too do the unseaworthiness and maintenance, cure, and related payment claims.").

Plaintiff's Second Cause of Action seeks remedy under the seaworthiness doctrine as announced in 1946 in *Sieracki*, in which the Supreme Court extended the doctrine beyond seamen to grant a

1 privately employed longshoreman the right to sue. 328 U.S. at 90-94. However, Congress took away the unseaworthiness remedy granted by *Sieracki* when it enacted the Longshoremen's and Harbor Workers' Compensation Act Amendments of 1972. 33 U.S.C. § 905(b). In considering whether the Amendments left pockets of the remedy to some longshoremen, the Ninth Circuit has stated, "Given that the 1972 Amendments have eviscerated if not eliminated *Sieracki*, we decline to consider it binding." *Normile v. Maritime Co. of the Philippines*, 643 F.2d 1380, 1382 (9th Cir. 1981).

**D.   Seaman Status Under the Doctrine of Maintenance and Cure**

Under both the Jones Act and the general maritime law doctrine of maintenance and cure, a seaman may recover from the ship's owner for food, lodging, and medical services resulting from illnesses or injuries incurred "in the service of the ship." *The Osceola*, 189 U.S. 158, 175, 23 S. Ct. 483, 487 (1903); see also *Cortes v. Baltimore Insular Lines*, 287 U.S. 367, 370-371, 53 S. Ct. 173, 174 (1932); *Calmar S.S. Corp. v. Taylor*, 303 U.S. 525, 527, 58 S. Ct. 651, 653 (1938); *Gardiner v. Sea-land Service, Inc.*, 786 F.2d 943, 945-46 (9th Cir. 1986).

"The legal test for seaman status for purposes of maintenance and cure is the same as that established for determining status under the Jones Act." THOMAS J. SCHOENBAUM, ADMIRALTY AND MAR. LAW § 6-28 (4th ed. 2004); *see also Hall v. Diamond M Co.*, 732 F.2d 1246, 1248 (5th Cir.1984). Claims for maintenance and cure depend on Defendant's qualifying as a "seaman" under the Jones Act. 476 F.3d at 784, n.3.

## ANALYSIS

In order to prove her First and Second Causes of Action and her demand for maintenance and cure, Plaintiff must prove that she qualifies for seaman status. Defendant argues that Plaintiff cannot meet the requirements for seaman status laid out by the Supreme Court and that therefore he is entitled to summary judgment on the First and Second claims and the demand for maintenance and cure. Mot. at 1:19-24. The requirement for seaman status is generally, an "employment-related connection to a vessel in navigation." *Wilander*, 498 U.S. at 355. Specifically,

> The worker's duties must contribute to the function of the vessel or to the accomplishment of its mission, and the worker must have a connection to a vessel in navigation (or an identifiable group of vessels) that is substantial in terms of both its duration and its nature.

*Chandris*, 515 U.S. at 376.

**A.     Connection to a vessel that is substantial in both duration and nature**

The first element of *Chandris*-- the requirement that an employee "contribute to the function of the vessel or to the accomplishment of its mission"-- is not disputed in this case. Plaintiff clearly contributed to the function of the vessel by trimming lines for the sails, in keeping with the ultimate goal of getting the most out of the available wind. Longaker Decl. at ¶ 8; Paetzold Decl. Ex. B at 69:5-22.

The second element -- the requirement of a substantial connection to a vessel in both duration and nature -- is the element in dispute. Defendant argues that Plaintiff's connection to the boat is not substantial because it is purely recreational in nature. Mot. at 11:7-10. Plaintiff has a full-time job on land as a language professor. *Id.* Plaintiff's activities on the boat are part of the sport of sailing and have no connection to her regular employment. *Id.* at 11:12-15. With regard to duration, Defendant argues that Plaintiff's connection to the boat is not substantial because on only one or two weekends a month, she drove from Monterey to San Francisco to engage in sailboat races on the boat. *Id*. at 11:7-10. Further, Defendant argues that the temporal connection is clearly inadequate under the 30 percent rule of thumb cited with approval in *Chandris,* which denies seaman status to "[a] worker who spends less than about 30 percent of his time in the service of a vessel in navigation." 515 U.S. at 371. The rule has consistently been applied "in terms of the percentage of work performed on vessels for the employer in question." 515 U.S. at 367; *see Palmer v. Fayard Moving & Transp. Corp.*, 930 F.2d 437, 439 (5th Cir. 1991); *Lormand v. Superior Oil Co.*, 845 F.2d 536, 541 (5th Cir. 1987), *cert. denied*, 484 U.S. 1031, 108 S.Ct. 739 (1988). Analogizing to the present case, Defendant argues that Plaintiff's participation aboard the boat was less than five percent of the time she spent in her teaching job. Mot. at 11:16-21.

Plaintiff argues that her connection to the boat is substantial because she was a "key, steady 'official crew' member" and "virtually all of her sailing" was aboard the boat. Opp'n at 8:1-3. With regard to duration, Plaintiff argues that her connection is substantial because she sailed on the boat "for about a year...upon perhaps 48 races." *Id*.

As an initial matter, Plaintiff's statements do not cite to the evidence and are conclusory.

1  Nowhere in the evidence is it suggested that she sailed in 48 races. The testimony of both Plaintiff and
2  Defendant states only that she raced every other week, that some months there were only two race days,
3  and that some days there were up to three races. Paetzold Decl., Ex. B at 27:16; Berschler Decl., Ex.
4  B at 23:12-25. The exact number appears to be closer to 16 or 17 races; Defendant states that the boat
5  entered only 16 or 17 races between August 2003 and July 2004, and Plaintiff in her own testimony
6  states that she missed "bunches" of races. Paetzold Decl., Ex. B at 27:10-12; Longaker Decl. at ¶¶ 4-5.
7  With regard to the nature of her connection, the word "official," as used by Plaintiff in her assertion that
8  she was "official crew," is unsupported by the evidence. Plaintiff merely states that she was "crew,"
9  and not "official crew," after the first or second time she sailed with Defendant. Berschler Decl., Ex.
10 A. at 71:2-4. It appears, therefore, that one can be "crew" in the context of recreational sailing after one
11 instance of sailing. As such, the term, in and of itself, does not appear to indicate a substantial
12 connection to a vessel.

The undisputed facts show that Plaintiff was a recreational boater whose connection to the boat was unrelated to her employment, that the boat entered perhaps 16 or 17 races from August 2003 to July 2004, and that she missed "bunches" of these races. To determine whether these facts can support a finding of substantial connection and therefore seaman status, the Court looks to how other courts have treated similar cases in post-*Chandris* decisions.

In *Xanadu Maritime Trust v. Meyer*, 21 F. Supp. 2d 1104, 1107 (N.D. Cal 1998) (Schwarzer, J.), the court found that the plaintiff's connection to the boat was not substantial in duration or nature, and that he was not a seaman. The plaintiff was engaged in recreational sailing on defendant's boat and was injured while performing a task related to the sail. *Id*. The plaintiff was one of several people on whom the defendant called to crew the boat, but had no standing arrangement or commitment to crew. *Id*. at 1106. He had been out on the boat not more than six times in a span of two years. *Id*. Citing the purpose of the *Chandris* test to extend only to those who in their work are regularly exposed to the perils of the sea, the court held that the plaintiff's connection to the boat did not reach a substantial level. *Id*.

Similarly, in *Hardesty v. Rossi*, 1995 WL 688416 (D. Md. 1995), the court found that the plaintiff was not a seaman because she failed both prongs of the *Chandris* test. *Id*. at *4. Plaintiff was

a recreational, weekend sailor and was injured while disembarking from the sailboat after a race. *Id*. at *1-2. She had participated in the race for her own enjoyment and not for any compensation. *Id*. at *4. She was a land-based employee of a clinic and had been on the boat no more than three times. *Id*. The court noted that she had spent "clearly less than 30 percent of her time in the service of [the defendant's] vessel," and found that she was not a seaman. *Id*.

In *Naglieri v. Bay*, 977 F. Supp. 131 (D. Conn. 1997), the court granted summary judgment on the issue of seaman status, finding that a recreational weekend sailor was not a seaman. The plaintiff's husband died in a boating accident while practicing for an upcoming race. *Id*. at 132. The husband was a member of the crew and was engaged in trimming the sail when the accident occurred. *Id*. at 133, 135. He was an avid sailor, and had participated in many races, including approximately 10 races on the defendant's boat. *Id*. at 136. His regular employment was as a real estate agent. *Id*. The court found that the husband's connection with the boat was not substantial, and that the husband was not the type of person the Jones Act was designed to protect. *Id*.

Like the unpaid, recreational crewmembers in *Xanadu*, *Hardesty*, and *Naglieri*, Plaintiff in this case does not have a substantial connection to the vessel and cannot be given seaman status. With regard to the nature of the connection, Plaintiff's connection was purely recreational and not work-related, like the plaintiffs in *Xanadu, Hardesty* and *Naglieri*. Plaintiff voluntarily sought out a boat on which to compete in recreational sailing for her own enjoyment, and she neither paid Defendant nor was paid by Defendant to sail. Longaker Decl. at ¶ 5. Plaintiff had full-time employment as a language instructor. Paetzold Decl., Ex. B at 18:1-3, 20:19-25. "The central purpose of the Jones Act [is] to protect those who are particularly vulnerable to the perils of the sea as a result of their employment and who, by tradition, have been wards of the admiralty law." *Fisher v. Nichols*, 81 F.3d 319, 321 (2d Cir.1996) (citing *Aguilar v. Standard Oil Co.*, 318 U.S. 724, 727-28 (1943)). Considering that the Jones Act, under the *Chandris* test, was designed to protect those who in their work are regularly exposed to the perils of the sea, Plaintiff does not have the requisite substantial connection to the boat. 515 U.S. at 368.

Further, as previously discussed, the nature of one's connection to a boat does not become

substantial because she is called to be "crew" in the recreational sailing context. This elevates form over substance. The plaintiffs in *Xanadu* and *Naglieri* were members of the "crew" and were performing their duties when injured. *Xanadu*, 21 F. Supp. 2d at 1106; *Naglieri*, 977 F. Supp. at 133, 135. Similarly, in the instant case, Plaintiff was also a member of the "crew" performing her duties, but was never referred to as "official crew." Berschler Decl., Ex. A at 71:2-4. While these duties may resemble work or employment, they are performed in the course of the recreational sport of sailing. Plaintiff's attempt to create an employment-related connection by asserting that she was "unquestionably performing the traditional work of a seafarer" is not well taken.

With regard to the duration of the connection, Plaintiff's connection is also not substantial. Like the plaintiffs in *Xanadu, Hardesty*, and *Naglieri*, who were all occasional or weekend sailors, in the instant case Plaintiff sailed only on weekends and by her own testimony missed "bunches of races."[1] *Xanadu*, 21 F. Supp. 2d at 1106; *Hardesty* at *1-2; *Naglieri*, 977 F. Supp. at 136; Longaker Decl. at ¶ 4; Paetzold Decl. Ex., B at 171:10-12. In terms of months or years, the plaintiff in *Xanadu* had been connected to the boat for about two years prior to the accident, where in the instant case Plaintiff has been connected to the boat for less than a year, from August 2003 to July 2004. 21 F. Supp. 2d at 1106; Longaker Decl. at ¶¶ 4-5.

In terms of the number of prior engagements on the boats, the plaintiffs in *Xanadu*, *Hardesty*, and *Naglieri* had been out on their respective boats six, three, and ten times prior to their accidents. *Xanadu*, 21 F. Supp. 2d at 1106; *Hardesty* at *4; *Naglieri*, 977 F. Supp. at 136. In the instant case, Plaintiff missed "bunches" of the perhaps 16 or 17 races in which the boat sailed from August 2003 to July 2004. Paetzold Decl., Ex. B at 27:10-12; Longaker Decl. at ¶¶ 4-5. Plaintiff does not state with any specificity the approximate number of times she had been out on the boat. In her testimony, she answers that she is unable to provide a number or even an approximate percentage of races in which she participated. Paetzold Decl., Ex. B. at 27:13-28:6. Although Plaintiff's opposition papers state that she

---

[1] Plaintiff did not sail on Defendant's boat in anything other than races. Paetzold Decl., Ex. B at 76:6-8. Whether Defendant's boat sailed only in races is not clear from the testimony. Defendant's declaration states, "I only used the boat for recreational sailing, including participating in amateur races on San Francisco Bay and the Delta." Longaker Decl. at ¶ 2. If Defendant used the boat for recreational purposes outside of races, it would only weaken the connection between Plaintiff and the boat.

sailed "perhaps upon 48 races," as previously discussed this statement is without support in the evidence, and in fact 16 or 17 appears to be more accurate. Thus, on this element Plaintiff fails to go beyond the pleadings to identify facts that show a genuine issue for trial. *Celotex,* 477 U.S. at 324.

Given Plaintiff's full-time employment on land and purely recreational participation on the boat, as well as the infrequency of her sailing, Plaintiff's connection to the boat is not substantial either in nature or in duration, and therefore she cannot be said to be a seaman.

**B.     Employment-related connection to the vessel**

Both Plaintiff and Defendant focus on a four-factor test, derived from agency law and used in *B.S.A. v. Graham*, 86 F.3d 861, 865 (9th Cir. 1996) to examine the existence of an employer-employee relationship. In *Graham*, the Ninth Circuit, in a split decision, reversed summary judgment on the grounds that the plaintiff might have had a substantial connection to the boat. *Id*. at 866. The plaintiff was an adult volunteer for a 10-day training outing with a nautical troop of boy scouts. *Id*. at 863. He was injured when he dove into shallow water to secure the boat. *Id*. Although the plaintiff was unpaid, he went through a formal application process to the boy scout council and was selected by defendant to be one of two supervising adults on board the boat. *Id*. The Ninth Circuit found that under the circumstances, there was a genuine issue of material fact as to whether the plaintiff had a substantial connection. *Id*. at 866.

The four factors the court considered were: "(1) the selection and engagement of the putative employee; (2) the situation vis-a-vis payment; (3) the situs of the power of dismissal; and (4) the situs of control over on-the-job conduct." *Id*. at 865. These factors were first used in connection with the Jones Act in *Heath v. American Sail Training Ass'n*, 644 F. Supp. 1459, 1468 (D.R.I. 1986), a pre-*Chandris* case. Only one other case besides *Heath* and *Graham*, also decided prior to *Chandris*, has used four the factors in the context of the Jones Act. *See Haggar v. Long Island University*, 1993 WL 86537 at *2 (E.D.N.Y. 1993).

It is not clear whether the four-factor test in *Graham* is in fact controlling. Although the Ninth Circuit correctly cites the *Chandris* test as the new test for determining seaman status, the court used

the four-factor test to examine the existence of an employer-employee relationship.[2] 86 F.3d at 864. However, even if the four-factor test were controlling, its application to this case would be of no avail to Plaintiff.

First, unlike in *Graham* where the defendant selected the plaintiff in a formal application process within the boy scout council, in the instant case, selection was an informal, mutual process with no application or signed contracts. 86 F.3d at 863; Mot. at 9:1-19. Plaintiff connected with Defendant through an informal sailing-enthusiast website, and had equal involvement in choosing which boat she would she would sail on. Mot. at 9:1-19. Defendant allowed Plaintiff to sail because she had expressed her interest in sailing and had requested to sail with Defendant. Longaker Decl. at ¶ 5. Second, like the plaintiff in *Graham*, in the instant case Plaintiff was unpaid. 86 F.3d at 863; Mot. at 9:1-19. However, the instant case differs because in *Graham*, the plaintiff was sailing as a volunteer worker for the boy scouts, whereas in the instant case, Plaintiff was a recreational sailor sailing for her own enjoyment and pleasure. *Id*. The first instance is an unpaid employment relationship in which compensation could be expected, while the second is a team-sport relationship in which compensation would not be expected.

Third, unlike in *Graham* where the defendant had the power to dismiss the plaintiff for nonperformance, in the instant case, Plaintiff was free to participate in the races or not, with the permission of the boat's owner. 86 F.3d at 865; Reply at 5:13-14. If Plaintiff had other plans on a race weekend, she would let Defendant know, and Defendant would ask routinely whether she wanted to participate in the next race. Paetzold Decl., Ex. B at 170:23-172:1. Fourth, unlike in *Graham* where the defendant was the superior of the two adults on board and clearly controlled the on-the-job conduct of plaintiff, in the instant case there was a team of recreational sailors and each member was in control of her own task, such as trimming the sails or steering. 86 F.3d at 863; Longaker Decl. at ¶ 8. Any directions given--like "ease the jib," "prepare to come about,"--would be in the nature of the sport, and not in the context of an employer-employee relationship to control on-the-job conduct.

Plaintiff argues that the four factors weigh in favor of employment status. However, Plaintiff

---

[2] It may be significant that *Chandris* was decided in the period between the district court's and Ninth Circuit's decisions in *Graham*.

12

1 provides only four conclusory statements that are not supported by the evidence. Plaintiff's argument
2 is reproduced, in its salient entirety, as follows:

> 1. Captain Lonaker [sic], the vessel owner, selected here [sic] for her skills.
> 2. There was a contractual or quasi-contractual agreement between the plaintiff and the defendant, as discussed below...
> 3. Captain Lonaker [sic] had the power to dismiss Ms. Knight.
> 4. Captain Longacker [sic] controlled all of Ms. Knight's work activities aboard.

Reply at 4:21-22; Opp'n at 7:12-21. Further, Plaintiff tacks on two additional conclusory statements, numbered (5) and (6), each unsupported by the evidence:

> 5. Ms. Knight was unquestionably part of the TWO SCOOP's complement.
> 6. Ms. Knight was unquestionably performing the traditional work of a seafarer.

Opp'n at 7:23-24. Plaintiff provides no citations to the evidence and makes no further argument about each of the four factors or her two additional points. In so doing, Plaintiff fails to go beyond the pleadings to identify facts that show a genuine issue for trial. *Celotex,* 477 U.S. at 324.

Finally, Plaintiff's argument in the context of the second factor that she had a contractual or quasi-contractual commitment to the Defendant is not well taken. See Opp'n at 8:7. As Defendant points out in his reply, Plaintiff's argument lacks legal significance because it relies on Plaintiff's own testimony that she felt an obligation that was "almost like a contract." Reply at 3:4-8; Opp'n at 8:7-13. Moreover, Plaintiff provides no legal authority establishing that the arrangement creates a legally enforceable obligation. *See* Opp'n 8:25-9:10. Plaintiff has clearly failed to go beyond the pleadings to identify facts that show a genuine issue for trial, and summary judgment is therefore appropriate. *Celotex,* 477 U.S. at 324.

**C.     Plaintiff's seaworthiness claim and demand for maintenance and cure**

Plaintiff alternatively argues that she qualifies as a seaman under the modified seaworthiness doctrine as announced in *Sieracki*. Opp'n at 10:19-21. Plaintiff argues that although Congress nullified the *Sieracki* expansion when it enacted the 1972 Amendments to the LHWCA, some pockets of *Sieracki* seamen remain and Plaintiff falls within one of these pockets. *Id*. at 10:24-26. However, Plaintiff does not cite to any controlling cases in support of her argument. Moreover, the Ninth Circuit has stated, "Given that the 1972 Amendments have eviscerated if not eliminated *Sieracki*, we decline to consider it binding." *Normile v. Maritime Co. of the Philippines*, 643 F.2d 1380, 1382 (9th Cir. 1981).

Plaintiff additionally argues that as a seaman under the Jones Act or the seaworthiness doctrine, she is entitled to maintenance and cure, in the form of disability support and health care costs. Opp'n 11:15-17. In support of her argument Plaintiff cites vaguely to the origins of the remedy in the ancient *Laws of Oleron* (promulgated during the first crusade and introduced to England by King Richard I) and a 1904 pre-Jones Act Supreme Court decision. *See* Opp'n at 11:18-24.

With regard to the seaworthiness claim, a major treatise states, "Seaman status for purposes of the warranty of seaworthiness is accorded to that class of persons who may claim the protection of the Jones Act . . . ." THOMAS J. SCHOENBAUM, ADMIRALTY AND MAR. LAW § 6-27 (4th ed. 2004). With regard to maintenance and cure, the same treatise states, "The legal test for seaman status for purposes of maintenance and cure is the same as that established for determining status under the Jones Act." *Id.* at § 6-28; *see also* 732 F.2d at 1248.

The Ninth Circuit has held that claims for unseaworthiness and for maintenance and cure depend on Defendant's qualifying as a "seaman" under the Jones Act. 476 F.3d at 784, n.2. "If the Jones Act claim fails [because the plaintiff does not qualify for seaman status], so too do the unseaworthiness and maintenance, cure, and related payment claims." *Id.* Because Plaintiff does not qualify as a seaman under the Jones Act, she does not qualify as a seaman for the purpose of her seaworthiness claim or her demand for maintenance and cure. Plaintiff has failed to establish the existence of an essential element to her case, and therefore summary judgment is appropriate. *Celotex*, 477 U.S. at 322.

Under the test articulated in *Chandris*, Plaintiff does not have a substantial connection to the vessel in duration or nature, and therefore does not qualify as a seaman under the Jones Act. Because Plaintiff does not qualify as a seaman under the Jones Act, she also does not qualify under the general maritime law seaworthiness doctrine. Similarly, she does not qualify under the general maritime law doctrine of maintenance and cure. Accordingly, summary adjudication is granted on Plaintiff's First and Second Causes of Action and the demand for maintenance and cure.

## **CONCLUSION**

IT IS HEREBY ORDERED THAT Defendant's Motion for Summary Adjudication as to the First and Second Causes of Action and the demand for maintenance and cure [Docket No. 23] is

1  GRANTED.

2      IT IS SO ORDERED.

Dated: 6/27/07

*Saundra B Armstrong*
SAUNDRA BROWN ARMSTRONG
United States District Judge